Robert STEWART, Plaintiff/Appellee,

v.

Donald DONGES, Defendant/Appellant.

Nos. 88–2454, 88–3020.

United States Court of Appeals,
Tenth Circuit.

Sept. 17, 1990.

Stephen French, Walz & French, Albuquerque, N.M. (M. Karen Kilgore, White, Koch, Kelly & McCarthy, P.A., Sante Fe, N.M., and Jerry A. Walz, Walz & French, Albuquerque, N.M., with him on the brief), for defendant/appellant.

Philip B. Davis, Albuquerque, N.M. (Richard Rosenstock, Chama, N.M. and Ma-

con McCrossen, Albuquerque, N.M., with him on the brief), for plaintiff/appellee.

Before ANDERSON and EBEL, Circuit Judges, BROWN, District Judge.*

EBEL, Circuit Judge.

This case presents the question of whether the filing of an interlocutory appeal from the denial of defendant's motion for summary judgment based on qualified immunity divests the district court of jurisdiction in the absence of a determination by the district court that the appeal is either frivolous or dilatory. We hold that it does, and because there was no such determination by the district court, it lacked jurisdiction to proceed to trial in this matter as it did. We therefore vacate the district court's judgment in favor of plaintiff. Defendant also has by separate appeal raised the propriety of the district court's denial of his pretrial motion for summary judgment. We conclude that the district court correctly denied that motion. Accordingly, this matter must now be remanded to the district court for further proceedings.

## I.  PROCEDURAL BACKGROUND [1]

Plaintiff-appellee Robert Stewart brought this action under 42 U.S.C. § 1983 against defendant-appellant Donald J. Donges for alleged violations of his rights under the Fourth and Fourteenth Amendments arising from the defendant's arrest of plaintiff for a reported larceny. Plaintiff alleged that defendant, a detective in the Rio Rancho, New Mexico, Police Department, conducted an inadequate investigation of the reported crime, made material misrepresentations and omissions in his affidavit in support of the warrant application, and then arrested plaintiff without probable cause in violation of the Fourth and Fourteenth Amendments.

Defendant moved for summary judgment on the basis of qualified immunity. On August 12, 1988, the district court held a

hearing on the motion. The district court denied that motion, holding that there were material facts in dispute. At that time, plaintiff's counsel engaged in the following colloquy with the court:

> THE COURT: I am going to deny the motion for summary judgment. I think there are several issues of fact that have not been resolved, and I cannot resolve them at this time, at this stage of the proceedings, so I will deny the motion.
> [PLAINTIFF'S COUNSEL:] Thank you, your Honor. Your Honor, with respect to the Mitchell v. Forsyth Doctrine and with respect to the fact that we are on your trailing docket for September 12, may we inquire at this time of the defendant's intention to take an appeal to the Tenth Circuit from your denial of summary judgment?
> THE COURT: I think I have to grant them an interlocutory one.
> [PLAINTIFF'S COUNSEL:] I agree you have to, but, what I want to know is if they plan on doing it. I think that such appeal, with all due respect, would be frivolous and the Tenth Circuit has counseled against frivolous appeals. I don't want to lose my setting on your docket. . . .
> THE COURT: If they want to appeal, we will talk about that. I am not going to force them to make a decision at this moment.

On August 15, 1988, the district court issued a written order denying defendant's summary judgment motion.

On September 6, 1988, the district court denied defendant's oral motion for a stay of the trial proceedings pending appeal:

> This matter having come up on defendants' oral motion to vacate the current trial setting in this matter and to stay these proceedings pending resolution of defendant Donges' appeal to the Tenth Circuit Court of Appeals from the order denying his motion for summary judg-

---

* The Honorable Wesley E. Brown, Senior District Judge, of the United States District Court for the District of Kansas, sitting by designation.

1.  For the sake of clarity, we set forth here only those procedural facts which are relevant to the

jurisdictional issue. The factual allegations material to the denial of defendant's summary judgment motion appear in section II B, *infra.*

ment on qualified immunity grounds, the Court having considered the motion and having heard argument thereon and further being fully advised in the premises, finds it not to be well taken. Now therefore,

It is ordered that defendants' motion to vacate the trial setting and for stay be, and hereby is, denied.

On September 14, 1988, defendant filed his interlocutory appeal of the denial of summary judgment (No. 88–2454). After the notice of appeal was filed, the plaintiff evidently never sought to have the district court declare defendant's interlocutory appeal frivolous, nor did the defendant renew his request for a stay. Neither party sought to have this court stay the district court proceedings during the pendency of the appeal, and the case proceeded to trial before a jury. The district judge directed a verdict on the issue of liability in favor of the plaintiff at the end of the trial and submitted only the damages issue to the jury. The jury returned a verdict against defendant for $39,804 in compensatory damages and $47,000 in punitive damages. Defendant then took a second appeal to this court from that judgment (No. 88–3020), which was consolidated with appeal No. 88–2454. Thus, we have before us both the appeal from the denial of summary judgment as well as the appeal from the final judgment entered in the plaintiff's favor.

## II. ANALYSIS

### A. *Divestiture of Jurisdiction (Appeal No. 88–2454)*

█ As an initial matter, we must decide whether the defendant's interlocutory appeal from the denial of summary judgment based on qualified immunity divested the district court of jurisdiction to conduct a trial. We hold that it did, and that because the trial was conducted without jurisdiction, it was a nullity.

Our analysis of this question begins with the axiomatic premise that "a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985).

Ordinarily the principle works the other way as well, and courts of appeals have no jurisdiction to review orders of the district court until there is a "final decision" from the district court under 28 U.S.C. § 1291. However, the Supreme Court has held that there is a small class of decisions "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). For appeals of decisions falling within the collateral order exception, the Court has given 28 U.S.C. § 1291 a "practical rather than a technical construction," and held that these types of interlocutory appeals ought to be treated as appeals from final decisions. *Id.* For example, in *Abney v. United States*, 431 U.S. 651, 657–62, 97 S.Ct. 2034, 2039–41, 52 L.Ed.2d 651 (1977), the Court held that the pretrial denial of a motion to dismiss an indictment on double jeopardy grounds falls within the " 'collateral order' exception to the final judgment rule first announced in *Cohen*." The Court explained that such rulings constitute the trial court's final rejection of the double jeopardy claim, the double jeopardy claim is independent of the criminal prosecution, and the defendant's right not to be exposed to double jeopardy might be irretrievably lost if pretrial appellate review were not available. *Id.* at 657–62, 97 S.Ct. at 2039–41.

In *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the Supreme Court relied on *Abney* and

held that the denial of a defendant's motion for summary judgment based on qualified immunity was also a collateral order for which interlocutory appeal was available. The Court explained that a public official's entitlement to qualified immunity for actions not in violation of clearly established law "is an entitlement not to stand trial or face the other burdens of litigation. ... The entitlement is an *immunity from suit* rather than a mere defense to liability; and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in original). The Court further reasoned that the district court's "denial of summary judgment finally and conclusively determines the defendant's claim of *right not to stand trial.*" *Id.* at 527, 105 S.Ct. at 2816 (emphasis in original). And finally, the Court concluded that, like the immunity from trial implicated in a motion to dismiss an indictment based on double jeopardy, a motion for immunity from trial based on qualified immunity was "separate from the merits of the underlying action for purposes of the *Cohen* test." *Id.* at 528–29, 105 S.Ct. at 2817. Because an appeal from the denial of a motion for summary judgment based on qualified immunity satisfied all of the criteria of *Cohen* and *Abney*, the Court held that such appeals were from collateral orders and could be taken under 28 U.S.C. § 1291.

Because the defendant's notice of interlocutory appeal in this case from the denial of his motion for summary judgment was timely filed and clearly proper under *Mitchell*,[2] we must next establish what the jurisdictional effect of that action was. We begin with the unassailable general proposition that the filing of a notice of appeal, whether from a true final judgment or from a decision within the collateral order exception, "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). *See Smith v. Phillips,* 881 F.2d 902, 904 n. 5 (10th Cir.1989); *Garcia v. Burlington Northern R.R. Co.,* 818 F.2d 713, 721 (10th Cir.1987) ("Filing a timely notice of appeal pursuant to Fed.R.App.P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void." (citations omitted)); J. Moore & B. Ward, 9 *Moore's Federal Practice,* ¶ 203.11 at 3–45, 3–46 (2d ed. 1990).[3]

The divestiture of jurisdiction occasioned by the filing of a notice of appeal is especially significant when the appeal is an interlocutory one. Unlike an appeal from a final judgment, an interlocutory appeal disrupts ongoing proceedings in the district court. When the interlocutory appeal is from the denial of a motion to dismiss an indictment based on double jeopardy or from the denial of a motion for summary

---

**2.** The Court in *Mitchell* held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on *an issue of law,* is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* 472 U.S. at 530, 105 S.Ct. at 2817 (emphasis added). Although *Mitchell*'s authorization for interlocutory appeals of rulings denying summary judgment based on qualified immunity was seemingly limited to those involving purely legal issues, this court has held that "[t]he Supreme Court's approval of an interlocutory appeal in a fact-specific case like *Anderson* [*v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ], in which the district court denied a pretrial qualified immunity defense motion, compels us to take an appeal, we believe, in all cases in which the denial is grounded upon a finding that disputed material facts exist in the case. Our task in such an appeal is ... to determine whether ... there exists a conflict sufficiently material to defendants' claim of immunity to require them to stand trial." *DeVargas v. Mason & Hanger–Silas Mason, Co.,* 844 F.2d 714, 719 (10th Cir.1988). The appeal in this case, therefore, falls squarely within *DeVargas.*

**3.** The district court only retains jurisdiction over tangential matters such as determining "the propriety and amount of attorney's fees," *Garcia,* 818 F.2d at 721, and performing "certain ministerial functions in aid of the appeal, such as correcting clerical mistakes in the record, approving appeal bonds, and issuing stays or injunctions pending the appeal." C. Wright, A. Miller, E. Cooper & E. Gressman, 16 *Federal Practice and Procedure,* § 3949 at 359 (1977).

judgment based on qualified immunity, the central issue in the appeal is the defendant's asserted right not to have to proceed to trial. The interruption of the trial proceedings is the central reason and justification for authorizing such an interlocutory appeal in the first place. "[W]hen an interlocutory appeal is taken, the district court [only] retains jurisdiction to proceed with *matters not involved in that appeal.*" *Garcia,* 818 F.2d at 721. Therefore, in such cases the divestiture of jurisdiction brought about by the defendant's filing of a notice of appeal is virtually complete, leaving the district court with jurisdiction only over peripheral matters unrelated to the disputed right not to have defend the prosecution or action at trial. In contrast to some interlocutory appeals under 28 U.S.C. § 1292(b) that challenge discrete orders that can be carved out and isolated from the remainder of the case, a motion to dismiss the *entire* proceeding based on a defense of double jeopardy or qualified immunity cannot be so isolated. If the defense is valid, then no part of the action should proceed against the defendant. In that regard, an interlocutory appeal from an order refusing to dismiss on double jeopardy or qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant. *See Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989); *cf. Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.").

Because the district court is divested of jurisdiction to proceed to trial by the filing of a notice of interlocutory appeal raising a double jeopardy or qualified immunity issue, there is the risk that such interlocutory appeals will be subject to abuse. As this court has previously explained in the double jeopardy context,

> the divestiture of jurisdiction rule, applicable generally when a defendant files a notice of appeal, should not leave the trial court powerless to prevent intentional dilatory tactics by enabling a defendant unilaterally to obtain a continuance at any time prior to trial by merely filing a motion, however frivolous, and appealing the trial court's denial thereof.

*United States v. Hines,* 689 F.2d 934, 936–37 (10th Cir.1982).

The court in *Hines* held that this potential misuse of interlocutory review could be prevented if the district court "(1) after a hearing and, (2) for substantial reasons given, (3) found the claim to be frivolous." *Id.* at 937 (numbering added). Upon such a procedure and an explicit finding that the claim raised on appeal was frivolous, the district "court should not be held divested of jurisdiction." *Id.* However, the court cautioned that "[t]his procedure is necessary" in order to prevent the divestiture of jurisdiction. *Id.* In *Hines,* the district court had held a hearing on the defendants' motion for abatement of the scheduled trial pending resolution of their *Abney* appeals. *Id.* at 936. After the hearing, the district court issued an order in which it

> found that the arguments supporting the double jeopardy claims were frivolous and without merit, that the denial of the motions to dismiss and the pleas of double jeopardy and the subsequent filing of defendants' notices of appeal did not divest the district court of jurisdiction, and that the motion to abate proceedings pending appeal should be denied.

*Id.* On appeal, this court held that such a finding of frivolousness enabled the district court to retain jurisdiction and to proceed to trial absent intervention by the court of appeals. *Id.* at 937.[4]

In *Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989), the Seventh Circuit ap-

---

**4.** Although in *Hines* the district court determined that the defendants' motion was frivolous, it is clear that the court was properly focused on whether the appeal from that motion was frivolous and whether the appeal should delay the trial because the determination was made after the motion had been denied and the notice of appeal filed. *See id.* at 936. The district court specifically stated as part of its frivolousness ruling that the defendants' notices of appeal did not divest it of jurisdiction. *Id.*

plied the same analysis in the context of an interlocutory appeal based on qualified immunity, and it adopted a procedure for preventing abusive appeals which virtually mirrors the procedure established in the double jeopardy context by this court in *Hines:* [5]

> Defendants may take *[Mitchell v.] Forsyth* appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to postponement by lodging a notice of appeal. Proceedings masquerading as *[Mitchell v.] Forsyth* appeals but in fact not presenting genuine claims of immunity create still further problems.
>
> Courts are not helpless in the face of manipulation. District judges lose power to proceed with trial because the defendants' entitlement to block trial is the focus of the appeal. If the claim of immunity is a *sham,* however, the notice of appeal does not transfer jurisdiction to the court of appeals, and so does not stop the district court in its tracks.

*Id.* at 1338–39 (emphasis added). The court in *Apostol* held that under these circumstances, or where the defendant has forfeited the right to interlocutory appeal by not filing timely notice, "a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial." *Id.* at 1339. The court was clear that it is the plaintiff's burden to obtain a determination that the defendant's appeal is frivolous or dilatory. "In the absence of the district court's reasoned finding of frivolousness or forfeiture, ... the trial is *automatically* put off; it should not be necessary for the defendants to come to this court, hat in hand, seeking relief that is already theirs by virtue of *[Mitchell v.] Forsyth,* which authorizes *pre-trial* appeals." *Id.* (first emphasis added). The court explained that it is only after the district court has determined the defendant's appeal to be frivolous or forfeited that the defendant must seek a stay from the court of appeals to prevent the trial from proceeding. *Apostol,* 870 F.2d at 1339. At that point, the frivolousness or

forfeiture determination is reviewable because "we have jurisdiction to determine our jurisdiction." *Id.*

*Hines* and *Apostol* both recognized that it is the district court's *certification* of the defendant's appeal as frivolous or forfeited rather than merely the *fact* that the appeal is frivolous which allows the district court to retain jurisdiction to conduct a trial. Other courts have similarly emphasized the need for a clear and reasoned finding of frivolousness or forfeiture by the district court in order to prevent the automatic divestiture of jurisdiction. *See, e.g., United States v. Leppo,* 634 F.2d 101, 105 (3d Cir.1980) (district court must have found the motion to be frivolous and must have supported its conclusion by written findings in order to prevent an interlocutory double jeopardy appeal from divesting it of jurisdiction); *United States v. Dunbar,* 611 F.2d 985, 988 (5th Cir.1980) (en banc), *cert. denied* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980) ("Henceforth, the district courts, in any denial of a double jeopardy motion, should make written findings determining whether the motion is frivolous or nonfrivolous. ... If nonfrivolous, of course, the trial cannot proceed until a determination is made of the merits of an appeal."). This rule provides valuable certainty and clarity by creating a bright jurisdictional line between the district court and the circuit court. A contrary rule which would allocate jurisdiction upon the actuality of whether the appeal is frivolous rather than upon the district court's certification of frivolousness, would give rise to unwarranted confusion and uncertainty as district court jurisdiction could never be known until after the appellate court had ruled. Once a notice of appeal on an appealable issue such as qualified immunity is filed, the status quo is that the district court has lost jurisdiction to proceed. To regain jurisdiction, it must take the affirmative step of certifying the appeal as frivolous or forfeited, and until that step is taken it simply lacks jurisdiction to proceed with

---

5. Interlocutory double jeopardy appeals are "so closely parallel to *[Mitchell v.] Forsyth* appeals

that the principles are freely transferable." *Apostol,* 870 F.2d at 1339.

the trial.[6]

Applying these principles to the case before us, we must determine if the district court made a reasoned determination that the defendant's interlocutory appeal from the denial of his motion for summary judgment was either frivolous or forfeited.[7] We conclude that it did not.[8]

In denying the defendant's motion for a stay of the proceedings pending appeal (which was made before the notice of appeal was filed), the district court ruled that it found the motion was "not to be well taken." R. Vol. II, Doc. 219. Because that ruling nowhere addressed frivolousness or forfeiture, it cannot constitute a finding sufficient to have prevented a divestiture of jurisdiction. The district court might simply have been concluding that the motion for a stay was not well taken because no notice of appeal had yet been filed, or

perhaps the court erroneously was applying the Fed.R.App.P. 8 standard of "likelihood of success on the merits" rather than a frivolousness standard in reaching its conclusion. There is simply no way for us to determine the basis of the court's ruling on the record before us. The fact that the district court's ruling on the defendant's motion to stay in this case is subject to multiple interpretations demonstrates the importance of *Hines'* requirement that the district court expressly state substantial reasons for finding the appeal to be frivolous or forfeited. That requirement avoids the "confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3192, 105 L.Ed.2d 700, —— U.S. ——, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989) (quoting *United States v. Clairborne*, 727 F.2d 842,

**6.** Plaintiff argues that because the defendants in *Hines* had applied to this court for a stay of the proceedings, no divestiture of jurisdiction takes place in the absence of such an application. We disagree. The court in *Hines* recognized that it is the filing of the notice of interlocutory appeal itself that operates to divest the district court of jurisdiction. *See id.* at 937. The court approved the certification of frivolousness or dilatory tactics as the only means for the district court to prevent that automatic divestiture: " 'in the absence of a *finding* that the motion is frivolous, the trial court *must* suspend its proceedings once a notice of appeal is filed.' " *Hines*, 689 F.2d at 937 (quoting *United States v. Leppo*, 634 F.2d 101 (3d Cir.1980)) (emphasis added). Motions for a stay pursuant to Fed.R. App.P. 8 or for a writ of mandamus or writ of prohibition under 28 U.S.C. § 1651 are potential *remedies* available to defendant to enforce his *right* not to be required to proceed to trial in a court that has lost jurisdiction over him because of his interlocutory appeal. But remedies should not be confused with rights. Defendants' right not to be tried while an interlocutory appeal is pending on qualified immunity arises "automatically" upon the appeal and "it should not be necessary for the defendants to come to this court, hat in hand, seeking relief that is theirs by virtue of *Forsyth*." *Apostol*, 870 F.2d at 1339. The standards that must be met to secure such extraordinary relief are very high, and thus the denial of such relief or the failure to grant such relief at the appellate level would ordinarily be without prejudice to the right of the defendant to argue the lack of frivolousness of his interlocutory appeal when the matter is considered by the appellate court on its merits.

**7.** Plaintiff argues that *Apostol* established "new law" and that if this court adopts the reasoning of *Apostol,* it should not be applied to this case. We disagree. Applying the test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we hold that the rule we apply was clearly foreshadowed by *Hines* and *Apostol,* and that the three part test of *Chevron* does not preclude application of this rule to this case. We do not, of course, address the potential application of this rule to any other cases that may not yet be final.

**8.** Recognizing the need for a frivolousness determination, plaintiff has filed with this court a "Motion For Determination That The District Court Can Rule On Motion For Certification Of Frivolousness And Forfeiture Pending Before It." On November 22, 1989, plaintiff filed a "Motion for Certification of Frivolousness and Forfeiture" in the district court. On January 5, 1989, the district court sua sponte stayed all proceedings relevant to that motion pending a determination by this court of its jurisdiction to rule on the motion. Plaintiff's motion to this court must be denied because it comes too late to validate a trial that has already been conducted without jurisdiction. Only a pretrial determination of frivolousness or forfeiture can return jurisdiction to the district court during the pendency of an interlocutory appeal under *Mitchell.* Once the notice of appeal divests the district court of jurisdiction, "[a]ny subsequent action by it is null and void." *Garcia v. Burlington Northern R.R. Co.,* 818 F.2d 713, 721 (10th Cir.1987).

850 (9th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984)).

Plaintiff argues that the district court's order directing a verdict in favor of the plaintiff is tantamount to a determination of frivolousness. This argument is without merit because a directed verdict requires application of a different standard than a frivolousness determination. A judge could grant a directed verdict even if there was a bona-fide doubt about the law so long as the evidence pointed in only one direction. Yet an appeal challenging the judge's interpretation of the law would not be frivolous. *Compare Autorama Corp. v. Stewart,* 802 F.2d 1284, 1288 (10th Cir. 1986), *with Zimmerman v. First Federal S & L Ass'n,* 848 F.2d 1047, 1051 (10th Cir.1988). In any event, the directed verdict ruling came at the end of trial rather than at the outset and hence could not validate the trial.

In conclusion, we hold that because the district court made no certification that the defendant's appeal from the denial of summary judgment based on qualified immunity was frivolous or forfeited, the district court was automatically divested of jurisdiction. Because the subsequent trial was conducted without jurisdiction, the court's judgment is without effect. In the next subsection, we hold that the district court correctly denied the defendant's motion for summary judgment due to a dispute of material fact, and thus we must remand for further proceedings.[9]

B. *Denial of Summary Judgment (Appeal No. 88–3080)*

The district court denied defendant's motion for summary judgment, ruling that there were material facts in dispute such

that summary judgment was inappropriate. As discussed above, an interlocutory appeal may be taken in all cases where the denial of defendant's qualified immunity summary judgment motion is "grounded upon a finding that disputed material facts exist in the case." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.,* 844 F.2d 714 (10th Cir.1988). The following standards and procedures apply when qualified immunity is raised as a defense in a motion for summary judgment and our review of the district court's conclusion is guided accordingly:

"In an attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interference in the performance of their duties as a result of baseless claims, the Court [has] adopted an objective test to determine whether the doctrine of qualified immunity applies." *Pueblo Neighborhood Health Centers, Inc., v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). The test for qualified immunity is whether defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 [106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ].

9. Given that the interlocutory appeal authorized by *Mitchell v. Forsyth* is designed to protect a governmental defendant's asserted right not to have defend against suit at trial, our holding might at first appear to produce the anomalous result of subjecting the defendant to a second trial in order to safeguard his right to avoid the first one. However, we believe that our holding at least partially vindicates defendant's qualified immunity rights by not enforcing a judgment against him that was the product of trial unsupported by jurisdiction, while at the same time ensuring that the rights of future governmental defendants are protected. *But c.f. United States v. Rumpf,* 576 F.2d 818, 821 (10th Cir.1978), *cert. denied* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978) (where *Abney* was decided after trial had been held and appeal was pending, court of appeals would not apply *Abney* retroactively and order another trial). Moreover, since we cannot say with certainty whether or not there will even be a second trial, that possibility should not govern our analysis.

Because of the important values protected by qualified immunity, the procedures to be followed when this particular affirmative defense is raised differ from those applicable to most other affirmative defenses. Once a defendant raises the defense of qualified immunity as a defense to an action, "[t]he plaintiff carries the burden of convincing the court that the law was clearly established." *Pueblo Neighborhood*, 847 F.2d at 645. The plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Id.* at 646. Only after plaintiff has shown a violation of a clearly established right does the defendant assume the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity. *See id.* Thus, unless and until the plaintiff is able to make the required showing that defendant's conduct violated a "clearly established" right, the government official is properly spared the burden and expense of proceeding any further.

*Powell v. Mikulecky*, 891 F.2d 1454, 1456–57 (10th Cir.1989).

The district court in this case denied defendant's motion for summary judgment solely based on the existence of material factual disputes. Thus, implicitly the district court must have concluded that plaintiff had carried his initial burden of alleging conduct in violation of clearly established law. We first review the plaintiff's allegations before proceeding to discuss the applicable case law.

### 1. Plaintiff's Allegations

After conducting an investigation, defendant Donges prepared an affidavit and presented it to the Assistant District Attorney for approval. The defendant's affidavit offered in support of the arrest warrant application provided as follows:

December 4, 1985[.] Ms. Jane MacKenzie notified the Rio Rancho Police Department that she believed that Mr. Rod Stewart, who had been staying at her residence, located at 1365 Sunset Road, Rio Rancho, Sandoval County, New Mexico, had removed from her residence one Sylvania color television set, one stereo system, one clock, one Polaroid camera and two Coleman sleeping bags. She advised that Mr. Stewart had been staying with her husband at his residence for a period of time. When she went to the residence she observed these items missing and notified authorities. December 7, 1985 Mr. Stewart was located in the parking lot of the Anchor Inn by Officers Jordan and Acosta. Affiant met with these officers in the parking lot and advised Mr. Stewart of the nature of this investigation. Mr. Stewart agreed to allow officers to search his apartment for the stolen property. Upon arrival the search was conducted and two Coleman sleeping bags were located in the rear bedroom of his apartment. Mr. Stewart stated that Mr. MacKenzie had allowed him to take the sleeping bags from the residence.

Affiant contacted Mr. Tony Trianfo, polygrapher for Sandoval County District Attorney's Office, in order to administer a polygraph examination to Mr. Stewart in regards to his alleged involvement in the theft of the aforementioned property. On January 7, 1986 Mr. Trianfo advised affiant that he had, in fact, administered the requested examination to Mr. Stewart and that Mr. Stewart, in his opinion, was deceptive.

Affiant is a full time, certified and salaried peace officer in the State of New Mexico with over 4½ years of criminal investigative experience.

Affiant prays that a warrant will issued for Mr. Stewart's arrest. [The following additional handwritten statement appears on the affidavit:] Affiant believes that Mr. MacKenzie did not give consent for these items due to the fact that victim was in treatment at the time according to Mrs. MacKenzie.

R. Vol. I, Doc. 147, Exhibit 8. The Assistant District Attorney approved the sufficiency of the affidavit, and a warrant for

Stewart's arrest was obtained from the local magistrate. Stewart was then arrested by Detective Donges on January 8, 1986. The charges against Stewart were ultimately dismissed in September 1986.

Plaintiff alleged that sometime after December 7, 1985, but before Stewart was arrested, Rio Rancho police officer Rusty Brown told Detective Donges that Mr. MacKenzie had been bragging at the Anchor Inn that he had caused Stewart trouble by accusing him of taking the sleeping bags; that Mr. MacKenzie said he had made the false accusation as part of an insurance scam; and that Detective Donges needed to investigate the case further. *See* R. Vol. I, Doc. 147 at 5. Defendant denied that Officer Brown ever made any such statements. *See* R. Vol. II, Doc. 198 at 3.

### 2. Clearly Established Law

■ Although the parties devote large portions of their briefs to a discussion of cases decided after the events at issue took place, in determining whether defendant violated plaintiff's clearly established rights, we may consider only those decisions decided prior to the allegedly unlawful arrest of plaintiff. " 'A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established *at the time of the conduct at issue.*' " *Lutz v. Weld County School Dist. No. 6,* 784 F.2d 340, 343 (10th Cir. 1986) (quoting *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1983) (emphasis added)).

The affidavit in support of the warrant request in this case has sufficient indicia of probable cause for a reasonable officer to believe that there was probable cause. The

affidavit detailed a victim's report, the suspect's opportunity to have stolen the goods, and the discovery of some of the goods which were reported stolen in the suspect's apartment during a consensual search, as well as a polygraph examination indicating deceptive responses. Plaintiff makes no substantive argument that the facts set forth in the affidavit would not give rise to probable cause. Instead, plaintiff focuses on defendant's alleged failure to disclose in the affidavit the information which plaintiff claims was reported to defendant by Officer Brown.[10] Therefore, we must determine whether it was clearly established at the time of plaintiff's arrest that making omissions of the type alleged from an affidavit given to obtain an arrest warrant violated plaintiff's rights under the Fourth and Fourteenth Amendments. We conclude that it was.

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that:

where the defendant makes a substantial preliminary showing that a false statement knowingly, or with reckless disregard for the truth, was included by the affiant, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if

---

**10.** Plaintiff asserts that there are three other "disputed material facts" which support the district court's ruling. Plaintiff claims defendant omitted from his affidavit the fact that Mrs. MacKenzie's statement (that her husband could not have consented to Stewart's use of the sleeping bags because he was in the hospital) conflicted with the dates given in the police report. However, there was no factual dispute on this point as defendant acknowledged the omission. Defendant also acknowledged omitting from the

affidavit the fact that Mr. MacKenzie was in an alcohol rehabilitation program. Finally, there was not a factual dispute about whether Donges told the Assistant District Attorney that he had not attempted to interview Mr. MacKenzie. In any event, because we hold that there was at least one material fact in dispute, we do not address plaintiff's other alleged factual disputes concerning either omissions or misrepresentations.

the probable cause was lacking on the face of the warrant.

*Id.* at 155–56, 98 S.Ct. at 2676. The Court emphasized that a defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth ... [a]llegations of negligence or innocent mistake are insufficient." *Id.* at 171, 98 S.Ct. at 2684. However, the Supreme Court in *Franks* did not determine whether a defendant was entitled to such a hearing in order to attempt to show deliberate or reckless *omissions* of material information from an affidavit.

Prior to the time of plaintiff's arrest in this case, the Tenth Circuit had not addressed whether the standards of *Franks* governed omissions as well as affirmative misstatements.[11] However, several of the other circuits had indicated that the "deliberate falsehood" and "reckless disregard" standards of *Franks* applied to material omissions, as well as affirmative falsehoods.[12] *See, e.g., United States v. Ippolito,* 774 F.2d 1482, 1486–87 n. 1 (9th Cir. 1985); *Olson v. Tyler,* 771 F.2d 277, 281 n. 5 (7th Cir.1985) ("The *Franks* rationale applies with equal force where police officers secure a warrant through the intentional or reckless *omission* of material facts." (emphasis in original)); *United States v. Ferguson,* 758 F.2d 843, 848 (2d Cir.) ("Omissions from an affidavit that are claimed to be material are governed by [*Franks v. Delaware*]), cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 125, 88 L.Ed.2d 102 (1985); *United States v. Williams,* 737 F.2d 594 (7th Cir.1984) ("[w]e acknowledge that the rationale of *Franks* applies to omissions") (cases cited), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 1355, 84 L.Ed.2d 377 (1985); *United States v. Johnson,* 696 F.2d 115, 118 (D.C.Cir.1982) ("the reasoning of *Franks* 'logically extends ... to material omissions'" (quoting 2 W. LaFave, *Search and Seizure* § 4.4 (Supp.1982))); *West Point–Pepperell, Inc. v. Donovan,* 689 F.2d 950, 959 (11th Cir.1982); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980) ("allegations of material omissions [are] to be treated essentially similarly to claims of material misstatements").[13] Therefore, we hold that at the time defendant submitted his affidavit and arrested plaintiff, it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit infor-

**11.** The court has since suggested that a material omission from a warrant application may violate the Fourth and Fourteenth Amendment in the same manner as a deliberate misstatement of a material fact does. *See United States v. Owens,* 882 F.2d 1493, 1498–99 (10th Cir.1989) (applying *Franks* and holding that the defendant "did not make a substantial preliminary showing that the warrant affidavits contained deliberate falsehoods, or false statements or *omissions* made with reckless disregard for the truth" (footnote omitted) (emphasis added)).

**12.** *Morfin v. Albuquerque Public Schools,* 906 F.2d 1434 (10th Cir.1990) ("In the absence of contemporary Tenth Circuit precedent directly concerning the issue, we may look to the law of other circuits when deciding whether or not a right was clearly established.")

**13.** Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

If an affidavit can be challenged because of material omissions, the literal *Franks* approach no longer seems adequate because, by their nature, omissions cannot be deleted.

One method would be to delete those technically true, though misleading, statements contained in the affidavit to which the omissions pertain. However, this approach may not always be effective, especially when the government omits an entire set of facts and it is unclear that they contradict any single statement in the affidavit but rather call the entire affidavit into doubt. (For example, an affidavit listing facts that might give rise to probable cause but omitting adverse facts would not make the individual alleged facts misleading in themselves.) A better approach, therefore, would be to delete false or misleading statements and insert the omitted truths revealed at the suppression hearing. *Ippolito,* 774 F.2d at 1487 n. 1; *see Williams,* 737 F.2d at 604; *West Point–Pepperell,* 689 F.2d at 959; *Martin,* 615 F.2d at 328. Thus, not every omission of relevant information will be regarded as "material." The omitted information must be so probative as to negate probable cause. We do not, in this case, need to define the parameters of materiality with any greater precision because here we are dealing only with an alleged recanting of the sole accusation upon which the arrest warrant was predicated. Our holding is limited to a conclusion that this omission is material.

mation which, if included, would have vitiated probable cause.[14]

 We further hold it was clearly established at the time of plaintiff's arrest that it would be highly material whether Officer Brown told defendant that Mr. MacKenzie had recanted on his accusation. *Franks* does not extend to immaterial omissions. *See e.g., United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980) (failure to disclose that informant was defendant's estranged wife is immaterial under *Franks* because magistrate could still have found probable cause had that information been included); *United States v. Williams*, 737 F.2d 594, 604 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985) (where omitted fact was of marginal value, no violation occurred under *Franks*). However, we can conceive of few omissions which would be more material than the failure to disclose that the main complainant had recanted his testimony and confessed it was a fabrication. If Officer Brown had in fact told Donges that information before the warrant against Stewart was obtained, then Stewart's failure to disclose that fact in his affidavit would be a reckless omission of a material fact in violation of plaintiff's clearly established rights because the affidavit would not support probable cause if it were modified so as to include that exculpatory evidence. Because the parties' summary judgment briefs disputed whether Brown did inform defendant of MacKenzie's recantation, "a triable conflict on [a] fact[ ] material to defendant['s] defense" existed such that we conclude that "there exists a conflict sufficiently material to require [defendant] to stand trial." *DeVargas*, 844 F.2d at 719.[15]

## III. CONCLUSION

Defendant's timely notice of interlocutory appeal divested the district court of jurisdiction because the district court did not declare his appeal frivolous. Because the trial held by the district court was conducted without jurisdiction and is therefore a nullity, we VACATE the district court's ruling directing a verdict in favor of plaintiff and the subsequent award of damages by the jury. We AFFIRM the district court's ruling denying defendant's motion for summary judgment based on qualified immunity because there was a factual dispute material to a determination of whether the defendant recklessly omitted a critical fact from the affidavit he submitted in seeking a warrant for the arrest of plaintiff. Accordingly, we REMAND for further proceedings consistent with this opinion.

14. Our conclusion that the law was "clearly established" does not necessarily imply that it was frivolous for defendant to argue otherwise in his interlocutory appeal. As long as there was no controlling Supreme Court or Tenth Circuit precedent at the time and it required an extension of the holding in *Franks* to establish a duty on behalf of the defendant not to withhold material information from the search warrant affidavit, we cannot necessarily say that an appeal arguing that the law was therefore not clearly established was "frivolous," a "sham," *Apostol*, 870 F.2d at 1339, or "wholly without merit," *Zimmerman*, 848 F.2d at 1051. A frivolousness standard is not only a more difficult standard to meet than a "clearly established" standard, it must be kept in mind that the "clearly established" standard is applied to the state of the law while the "frivolousness" standard asks not what the law was, but whether it could even be argued that the law was not clearly established. However, for purposes of this appeal we need not determine whether the appeal was, in fact, frivolous.

15. Because we hold that it was clearly established that an officer was liable under § 1983 for deliberate or reckless omissions of information vitiating probable cause, we do not consider whether the parameters of an officer's liability for failing to recognize that the facts stated in an affidavit do not support probable cause were clearly established. Likewise, we do not address defendant's argument that once probable cause is established, an officer has no duty to investigate further.