**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICIA ANN CAREY,

     Plaintiff-Appellant,

v.

AMY OKUBO; WILLIAM WOOD,

    Defendants-Appellees.

No. 04-1516
(D.C. No. 04-M-1606 (PAC))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH, PORFILIO**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Patricia Ann Carey is appealing the order entered by the district court dismissing her civil rights complaint under Fed. R. Civ. P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

### A. Introduction.

We review the district court's grant of a motion to dismiss de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to Carey. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Having conducted the required de novo review, we have concluded that the district court did not err in dismissing Carey's complaint for failure to state a claim upon which relief can be granted. We reach this conclusion based on our determination that the district court correctly determined that defendants are entitled to absolute prosecutorial immunity with regard to Carey's claim that they violated her Fourth Amendment rights.[1]

### B. Carey's Complaint.

In her complaint, Carey alleged as follows:

> 2. Defendant Amy Okubo is a . . . Deputy District Attorney in [Boulder County, Colorado]. Although Amy Okubo has acted in a prosecutorial capacity with respect to the Plaintiff, liability is

---

[1] Because we have determined that defendants are entitled to absolute prosecutorial immunity, we do not need to address the issue of qualified immunity.

asserted herein for that portion of her participation as a witness under *Kalina v. Fletcher*, 522 U.S. 118 (1997). . . .

3.  Defendant William Wood is . . . employed by Boulder County Community Services as a case manager providing pretrial supervision to persons charged in [Boulder County] with criminal offenses. . . .  [T]he claims herein are based upon the conduct of William Wood in all aspects with regard to the preparation of the request for the two arrest warrants for alleged violation of bail bond conditions.

. . . .

5.  On June 22, 2004, Plaintiff Patricia Carey was admitted to bail in Boulder County District Court case number 02CR1297 and 02CR1866 with a bond condition that Plaintiff not consume non-prescribed drugs while on bond.  Pursuant to the conditions of said bail bonds, Plaintiff was subjected to the supervision of Boulder County Community Justice Services and assigned to William Wood.

6.  Boulder County Community Justice Services and William Wood, [were] aware that the amino enzyme screening done to analyze the urine tests it was administering were not sufficiently reliable to be accepted for evidentiary purposes in judicial proceedings, and had been specifically told by James Ruth, Ph.D. that "You can't send People to prison on these test results without obtaining a confirmatory test by Gas Chromotography-Mass Spectrometry."

7.  On June 30, 2004, Plaintiff provided a urine sample which ultimately tested potentially positive for metabolites of cocaine by screening amino-enzyme inventories, indicating the need to order confirmatory testing.  Knowing that a confirmatory test was necessary to obtain any judicially admissible result, on July 13, 2004, William Wood prepared [] "Community Justice Services Noncompliance Report[s]" and submitted [them] to the District Attorney's office, requesting arrest warrants for a bond revocation.  Although William Wood was aware that subsequent urine testing had come back below threshold and that the test used [was] not accepted in the scientific community as reliable to confirm the use of cocaine,

the "Community Justice Services Noncompliance Report[s]" failed to remind the District Attorney that the test[] [was] not viewed as sufficiently reliable for use in evidence.

8. On July 13, 2004, Amy Okubo, acting as a witness, verified [identical] motion[s] to revoke the bail bond of Patricia Carey, in Boulder County District Court case number 02CR1297 and 02CR1866, testifying,

> The defendant is on bond for a class three felony Possession with Intent to Sell and Sale of a Schedule II Controlled Substance. As a condition of the defendant's bond she is to consume no drugs. On June 30, 2004, eight days after the defendant first appeared in custody at the Boulder County Jail, she tested positive for the presence of cocaine in a urine sample. Cocaine metabolites are not normally present in urine samples seventy-two hours (three days) after last usage. In this case the metabolites were present eight days later. See attached documentation from Community Justice Services.

Said verified motion[s] recklessly omitted the fact that . . . the test was not of evidentiary value . . . . The reckless omission of exculpatory facts from the verified motion[s] rendered the verified motion[s] constitutionally false under *Stewart v. Donges*, 915 F.2d 572, 583 (Tenth Cir. 1990).[2]

9. A arrest warrant[s] with no bond [were] issued on the verification[s] of Amy Okubo and Patricia Ann Carey was arrested on July 14, 2004. Patricia Ann Carey was held without bond until July 26, 2004, when the Verified Motion[s] to Revoke Bond [were] heard [and denied] by the district court.[3] Patricia Ann Carey was

---

[2] Carey also alleged that the verified motions recklessly omitted other facts, but she is not pursuing those omission claims in this appeal.

[3] At the conclusion of the hearing on July 26, 2004, the Boulder District Court denied the verified motions to revoke bond. The court denied the motions

(continued...)

forced to incur $6,093.46 in defense charges, including $2,950.00 in expert witness fees and suffered loss of her liberty by spending twelve days in jail.

. . . .

13. William Wood and Amy Akubo sought an arrest warrant for the arrest of Patricia Ann Carey through the sworn testimony of Amy Okubo, which testimony was materially false, and omitted material exculpatory facts. Said conduct violated Patricia Carey's right, pursuant to the Fourth Amendment to the Constitution of the United States to be free from unreasonable arrest or seizure . . . .[4]

Aplt. App. Vol. 1 at 4-7.

## C. District Court's Rulings.

The district court granted defendants' motion to dismiss at the conclusion of a hearing on the motion, ruling from the bench as follows with regard to the issue of absolute prosecutorial immunity:

And here is my ruling. I'm granting the motion to dismiss on three separate grounds.

. . . .

The third is I believe that this is subject to absolute [prosecutorial] immunity. I don't think the special circumstances that the Supreme Court relied on in the Kal[i]na against Fletcher case are comparable to this case. In that case, there was, by the assistant

---

[3](...continued)
because Carey presented unrebutted expert testimony establishing that defendants were relying on an initial drug screening test that was not sufficiently reliable to confirm a positive cocaine test. *See* Aplt. App., Vol. 1 at 76; Vol. 3 at 431-36.

[4]     Carey also asserted a due process claim, but she has abandoned that claim for purposes of this appeal.

district attorney in that case, false information provided. Now, it happened to be both omission and commission falsity, but the conduct of the defendant in that case is different from the conduct of the defendants in this case, so the case is not applicable in my opinion.

*Id.*, Vol. 3 at 478.

**D. Undisputed Matters.**

Before proceeding to analyze the merits of Carey's Fourth Amendment claim, we note that neither side disputes that: (1) Wood was acting as an agent of the Boulder County District Attorney's office in his capacity as a pretrial case manager; (2) Wood was performing a prosecutorial function when he submitted the noncompliance reports to the Boulder County District Attorney's office and recommended that Carey be arrested and taken into custody for violating her bond conditions; and (3) Wood's alleged knowledge of what Dr. James Ruth allegedly said about the test procedures at issue here is imputed to the Boulder County District Attorney's office and, more specifically, to Deputy District Attorney Okubo. We will therefore analyze the absolute immunity issue within this framework.

## II.

**A. Defendant Okubo's Verified Motions.**

As set forth in Carey's complaint, defendant Okubo signed the "Verification" for the two verified motions to revoke bond that she submitted to

the Boulder District Court. Specifically, Okubo "[swore] and affirm[ed] that the [facts set forth in the motions were] true and accurate to the best of [her] information and belief." Aplt. App., Vol. 1 at 101; Vol. 2 at 235. The facts sworn to included the following:

> On June 30, 2004, eight days after the defendant first appeared in custody at the Boulder County Jail, she tested positive for the presence of cocaine in a urine sample. Cocaine metabolites are not normally present in urine samples seventy-two hours (three days) after last usage. In this case the metabolites were present eight days later. See attached documentation from Community Justice Services.

*Id.*

The "FINAL REPORT" from Forensic Laboratories was among the documents that were attached to the verified motions, and the report stated that "Cocaine SQ" was detected by "POSITIVE CONFIRMATORY SCREEN BY EIA." *Id.*, Vol. 1 at 105; *see also id.*, Vol. 2 at 239. As set forth in defendants' brief, the acronym "EIA" refers to a specific type of drug test known as the "enzyme immunoassay test." Aplee. Br. at 1. In her complaint, Carey refers to this test as "amino enzyme screening," Aplt. App., Vol. 1 at 5, ¶ 6, and we will refer to it herein as the "EIA test" to avoid confusion.

**B. Absolute Prosecutorial Immunity.**

Colo. Rev. Stat. § 16-4-107(4) provides as follows:

Upon verified application by the district attorney stating facts or circumstances constituting a breach or a threatened breach of any of the conditions of a bond, the court may issue a warrant commanding

any peace officer to bring the defendant without unnecessary delay before the court for a hearing on the matters set forth in the application.

Defendants claim that this statute requires that an application to revoke a bond must be verified by the district attorney, as opposed to some other "fact witness," and that this statutory requirement distinguishes the situation in this case from the situation in *Kalina v. Fletcher*, 522 U.S. 118 (1997). *See* Aplee. Br. at 16-17; *Kalina,* 522 U.S. at 129 ("Although [Washington] law required that [an affidavit in support of an arrest warrant must] be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for the prosecutor to make that certification."). Defendants also claim that this case is distinguishable from *Kalina* because, unlike the situation in *Kalina*, the sworn verifications at issue in this case do not contain any false statements of fact. *See* Aplee. Br. at 9.

In *Kalina*, the Supreme Court addressed "[t]he question [of] whether 42 U.S.C. § 1983 creates a damages remedy against a prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant, or whether . . . such conduct is protected by 'the doctrine of absolute prosecutorial immunity.'" *Kalina,* 522 U.S. at 120. In addressing this issue, the Court began its analysis by pointing out that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections

of absolute immunity." *Id.* at 126 (quotation omitted). The Court also noted, however, that "the defense [of absolute immunity is not available] when the prosecutor was performing a different function." *Id.* "Thus, in determining [absolute] immunity, [a court must] examine the nature of the function performed, not the identity of the actor who performed it." *Id.* at 127 (quotation omitted).

Applying these principles, the Court then analyzed the absolute immunity issue in *Kalina* as follows:

> [P]etitioner argues that the execution of the [certification for determination of probable cause] was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution. That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment. . . . But that judgment could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.
>
> . . . .
>
> [W]e . . . hold that § 1983 may provide a remedy for respondent insofar as petitioner performed the function of a complaining witness. We do not depart from our prior cases that have recognized that the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate.

*Id.* at 130-31. The Court therefore agreed with the district court and the Ninth Circuit that the prosecutor in *Kalina* "was not entitled to absolute immunity." *Id.* at 122.

As set forth above, there is no question that Okubo vouched for the truth of the facts that were set forth in the verified motions to revoke bond, and we do not agree with defendants' argument that Colo. Rev. Stat. § 16-4-107(4) requires that an application to revoke a bond must be verified by the district attorney. In addition, even if the statute could be construed to require such a result, we do not believe the absolute immunity analysis should turn on whether the controlling state law requires a prosecutor to provide a sworn verification. That said, we nonetheless conclude that *Kalina* is distinguishable, and that the district court correctly determined that Okubo is entitled to absolute prosecutorial immunity with regard to her conduct in presenting the lab report from Forensic Laboratories to the Boulder District Court.

To begin with, as pointed out by defendants, unlike the situation in *Kalina*, there is no allegation here that the verified motions to revoke bond contained any false statements of fact. To the contrary, it is undisputed that the urine sample that Carey provided on June 30, 2004 tested positive for cocaine according to the lab report provided by Forensic Laboratories. *See* Aplt. App., Vol. 1 at 105; Vol. 2 at 239. We also reject Carey's argument that *Kalina* applies here because

Okubo allegedly omitted material information from the verified motions concerning the scientific reliability of the EIA test procedure. Simply put, while Okubo did indeed vouch for the truth of the facts set forth in the verified motions, her statements did not vouch for the scientific reliability of the EIA test procedure. Instead, the scientific reliability of the EIA test procedure was an issue for the Boulder District Court to decide, and, in fact, the court subsequently decided the issue in favor of Carey when it denied the verified motions to revoke bond at the hearing that was held on July 26, 2004. *Id.*, Vol. 1 at 76; Vol. 3 at 431-436.

Finally, because he did not personally vouch for the truth of any of the factual matters that were set forth in the noncompliance reports, *id.*, Vol. 1 at 103; Vol. 2 at 237, and because it is undisputed that he was performing a prosecutorial function, we also conclude that the district court correctly determined that Wood is entitled to absolute prosecutorial immunity for his conduct in this case.

The judgment of the district court is AFFIRMED. The parties' requests for oral argument are DENIED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-11-