**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

**July 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

KENNETH P. KELLOGG; RACHEL
KELLOGG; KELLOGG FARMS,
INC.; ROLAND B. BROMLEY;
BROMLEY RANCH, LLC; JOHN F.
HEITKAMP; DEAN HOLTORF;
GARTH KRUGER; CHARLES
BLAKE STRINGER; STRINGER
FARMS, INC.,

      Plaintiffs - Appellants,

v.

WATTS GUERRA LLP; DANIEL
M. HOMOLKA, P.A.; YIRA LAW
OFFICE, LTD; HOVLAND AND
RASMUS, PLLC; DEWALD
DEAVER, P.C., LLO; GIVENS
LAW, LLC; MAURO, ARCHER &
ASSOCIATES, LLC; JOHNSON
LAW GROUP; WAGNER REESE,
LLP; VANDERGINST LAW, P.C.;
PATTON HOVERSTEN & BERG,
PA; CROSS LAW FIRM, LLC;
LAW OFFICE OF MICHAEL
MILLER; PAGEL WEIKUM, PLLP;
WOJTALEWICZ LAW FIRM, LTD.;
MIKAL C. WATTS; FRANCISCO
GUERRA; LOWE EKLUND
WAKEFIELD CO., LPA; JOHN
DOES, 1-250,

      Defendants - Appellees.
_____

No. 20-3172

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:18-CV-02408-JWL-JPO)**

———————————————————

Douglas J. Nill, Douglas J. Nill, PLLC, Minneapolis, Minnesota, for Plaintiffs-Appellants.

Christopher L. Goodman, Thompson, Coe, Cousins & Irons, Saint Paul, Minnesota (John M. Degnan, Kathryn M. Short, and Adam Chandler, Taft Stettinius & Hollister, LLP, Minneapolis, Minnesota; Arthur G. Boylan and Philip J. Kaplan, Anthony Ostlund Baer & Louwagie P.A., Minneapolis, Minnesota; and William L. Davidson and Joao C.J.G. de Medeiros, Lind Jensen Sullivan & Peterson PA, Minneapolis, Minnesota, with him on the briefs), for Defendants-Appellees.

———————————————————

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.

———————————————————

**BACHARACH**, Circuit Judge.

———————————————————

This appeal stems from mass litigation between thousands of corn producers and an agricultural company (Syngenta). The litigation took two tracks. On one track, corn producers filed individual suits against Syngenta. On the second track, other corn producers sued through class actions.[1]

The appellants are some of the corn producers who took the first track, filing individual actions. (We call these corn producers the "Kellogg farmers.") The Kellogg farmers alleged that their former attorneys had failed to disclose the benefits of participating as class members, resulting

———————————

[1]    The court certified eight statewide classes and one national class.

2

in excessive legal fees and exclusion from class proceedings. These allegations led the Kellogg farmers to sue the attorneys who had provided representation or otherwise assisted in these cases. The suit against the attorneys included claims of common-law fraud, violation of the Racketeer Influenced and Corrupt Practices Act (RICO) and Minnesota's consumer-protection statutes, and breach of fiduciary duty.

While this suit was pending in district court, Syngenta settled the class actions and thousands of individual suits, including those brought by the Kellogg farmers. The settlement led to the creation of two pools of payment by Syngenta: one pool for a newly created class consisting of all claimants, the other pool for those claimants' attorneys. For this settlement, the district court allowed the Kellogg farmers to participate in the new class and to recover on an equal basis with all other claimants.

The settlement eliminated any economic injury to the Kellogg farmers, so the district court dismissed the RICO and common-law fraud claims. The court also dismissed the Kellogg farmers' other claims, reasoning that

- the Kellogg farmers had failed to allege a public benefit from the claims under Minnesota's consumer-protection laws,

- the Kellogg farmers' disobedience of court orders merited dismissal of the claim for breach of fiduciary duty, and

- seven other law firms, which had provided assistance, could not have breached a fiduciary duty because they had no attorney-client agreements with the Kellogg farmers.

3

The court not only dismissed these claims but also assessed monetary sanctions against the Kellogg farmers. We uphold these rulings.

## Background

### I. The Kellogg farmers sue Syngenta and then sue their former attorneys.

Like most of the other corn producers, the Kellogg farmers sued Syngenta for genetically modifying corn-seed products and commingling these products in the U.S. corn supply. The Kellogg farmers had intended to export much of that corn to China, but the Chinese government refused to import genetically modified corn. That refusal sparked tumbling corn prices and financial disaster for thousands of corn producers like the Kellogg farmers. Corn producers reacted by filing thousands of suits against Syngenta, and the Judicial Panel on Multi-District Litigation transferred the suits to the District of Kansas for pretrial proceedings.

As the suits progressed, the Kellogg farmers began to reconsider the benefits of suing individually rather than participating in the class actions. As the Kellogg farmers reconsidered their litigation strategy, they suspected their former attorneys of inflating the legal fees by touting individual actions and concealing the benefits of class litigation. So the Kellogg farmers retained new counsel and sued in Minnesota federal district court, asserting claims against their former attorneys and seven

other law firms that had provided legal assistance. That suit was then transferred to the District of Kansas as part of the multi-district litigation.

**II.    The Syngenta litigation settles, creating separate pools to compensate the corn producers and their former attorneys.**

After the Kellogg farmers sued their former attorneys, the district court approved a global settlement of the cases involving Syngenta's genetically modified corn. The Kellogg farmers acknowledge that the settlement allowed them to participate equally as members of a newly created class consisting of all settling claimants. Corn producers in this class split a settlement pool of roughly $1 billion that Syngenta had paid.

The district court also created a separate pool of about $500 million for all of the claimants' attorneys. Given the availability of this pool, the court prohibited enforcement of any contingency-fee agreements.

**Analysis of the Claims Against the Kellogg Farmers'
Former Attorneys**

Most of the appellate issues involve the Kellogg farmers' claims against their former attorneys. These issues fall into two categories:

1.    Arguments that the district judge should have refrained from ruling on certain issues

2.    Arguments that the district judge erred in the rulings that he did make

5

## I.    The district judge didn't err in ruling on particular issues.

The Kellogg farmers argue that the district judge erred by deciding particular issues rather than leaving them for another court or judge. According to the Kellogg farmers, the district judge

- should not have ruled on the merits because the case had been improperly transferred to the District of Kansas,

- should have recused, and

- lost jurisdiction after the Kellogg farmers had appealed the denial of their motion to recuse.

We reject these arguments.

### A.    We lack jurisdiction to review the Multi-District Litigation Panel's transfer of the case to the District of Kansas.

In the Panel's proceedings, the Kellogg farmers moved to vacate the transfer to the District of Kansas. The Panel denied the motion and a later request to reconsider this ruling. The Kellogg farmers ask us to

- direct the Multi-District Litigation Panel to retransfer the case to the District of Minnesota and

- vacate all orders in the District of Kansas.

We lack jurisdiction to consider these requests.[2]

---

[2]    In their opening brief, the Kellogg farmers devote only one sentence to this argument:

> To comply with the § 1407(a) mandate and [the Kellogg farmers'] due process rights to proceed with their federal and Minnesota claims before an impartial judge to protect and preserve their property interest in the Syngenta [multi-district

6

Federal law expressly prohibits appellate review of the Panel's denial of a motion to transfer the case to the originating court. *See* 28 U.S.C. § 1407(e) ("No proceedings for review of any order of the panel may be permitted except by extraordinary writ . . . ."). Given the statutory prohibition of appellate review, transfer decisions are reviewable only through an extraordinary writ. *Id.*; *see In re Morg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) (concluding that "[m]andamus is the exclusive mechanism for reviewing [the Multi-District Litigation Panel's] orders" and dismissing an appeal for lack of jurisdiction because the appellants had not sought mandamus); *In re Wilson*, 451 F.3d 161, 168 (3d Cir. 2006) ("Mandamus is the sole means though which petitioners can seek review of the [Multi-District Litigation Panel's] order."); *Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16, 19 n.3 (1st Cir. 2004) ("The language of 28 U.S.C. § 1407(e) only permits the courts of appeals for the

---

litigation] common fund, [the Kellogg farmers] respectfully request that the Court vacate all orders and decisions in the *Kellogg* lawsuit in the District of Kansas under § 2106 and the Court's inherent supervisory authority, and direct the [Multi-District Litigation] Panel under §§ 1407 and 2106 and in the interests of justice to return *Kellogg* to the District of Minnesota.

Appellants' Opening Br. at 27. For the sake of argument, we assume that this sentence adequately develops an argument that the Panel should not have transferred this case as part of the multi-district litigation. *Cf. Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (stating that an argument was waived when it consisted of a single sentence in an appeal brief).

transferee court to review the [Multi-District Litigation Panel's] transfer decision via the issuance of an extraordinary writ . . . ."); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) ("There can be no doubt therefore that mandamus is an appropriate means of testing a district court's § 1404(a) ruling."). Indeed, the Kellogg farmers themselves argued in district court: "In 28 U.S.C. § 1407(e), Congress stated that the *only* process for 'review' of transfer orders is via 'extraordinary writ' under 28 U.S.C. § 1651 'in the court of appeals having jurisdiction over the transferee district.'" Class Pls.' Omnibus Surreply to Mots. to Dismiss at 14, No. 18-cv-2408-JWL-JPO (D. Kan. Mar. 6, 2019) (emphasis in original). We have previously denied the Kellogg farmers' requests for a writ, and we lack jurisdiction to review the transfer through this appeal.[3]

The Kellogg farmers argue that the Supreme Court has allowed appellate review of a Panel order, citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). We disagree with this interpretation of *Lexecon*.

*Lexecon* did not involve a challenge to the Panel's transfer of a case. There the Panel had transferred a case for pretrial proceedings. *Id.* at 31–32. After these proceedings ended, the transferee court refused to return

---

[3]     The Kellogg farmers asked us three times for a writ. When we declined for the third time, the Kellogg farmers asked the Supreme Court for a writ. The Supreme Court also declined to issue a writ.

the case to the initial court, conducted the trial, and entered judgment for the defendants. *Id.* at 32. The plaintiff appealed, challenging the transferee court's refusal to remand the case to the initial court for trial. *Id.* The Supreme Court concluded that the transferee court had to remand the case to the initial court before the case could go to trial. *Id.* at 40–42.

*Lexecon* addressed a federal district court's refusal to remand a case after the pretrial proceedings had ended. There the problem arose because the transferee court had conducted a trial. Our case instead addresses the validity of the Panel's transfer order for pretrial proceedings—an issue that didn't arise in *Lexecon*. Given these differences, *Lexecon* does not apply and federal law prohibits jurisdiction to consider

- the Panel's refusal to return the case to the District of Minnesota and

- the Kellogg farmers' request to vacate all of the District of Kansas's orders.

## B. The district judge acted within his discretion in denying the Kellogg farmers' motion to recuse.

The Kellogg farmers also argue that the district judge should have recused. This argument stems from suspicion that the district judge met privately with the former attorneys to discuss exclusion of the Kellogg farmers from any proposed class. This suspicion led the Kellogg farmers to request recusal, and the district judge declined this request. We conclude that the district judge did not abuse his discretion in declining to recuse.

9

1.    **The abuse-of-discretion standard applies to the district judge's decision not to recuse.**

In considering whether a district judge erred in declining to recuse, we ordinarily apply the abuse-of-discretion standard. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1508 (10th Cir. 1995). But the Kellogg farmers urge de novo review, invoking exceptions when

- the district judge "does not acknowledge the factual evidence" supporting disqualification or

- the claimant alleges a denial of due process.

Appellants' Opening Br. at 26. In urging these grounds for de novo review, the Kellogg farmers have misinterpreted our case law.

For the first exception, the Kellogg farmers rely on *Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162 (10th Cir. 1999). But they err in applying the exception recognized in *Sac & Fox Nation*. There we conducted de novo review because the district judge had failed to create a record on the decision not to recuse. *Id.* at 1168.

That exception lacks any bearing here because the district judge explained his refusal to recuse. In this explanation, the district judge

- cited caselaw stating that recusal isn't necessary when a judge acquires knowledge from a related proceeding and

- observed that a party's disagreement with rulings doesn't show bias.

Mem. & Order at 12, No. 18-cv-2408-JWL-JPO (D. Kan. Dec. 18, 2019) (citing *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987)). The

10

judge added that he had not met privately with anyone to discuss exclusion of the Kellogg farmers. Mem. Op. & Order at 10, No. 18-cv-2408-JWL-JPO, No. 14-MD-2591-JWL (D. Kan. Apr. 3, 2020). The Kellogg farmers disagree with this explanation, but disagreement alone doesn't trigger the exception: The trigger is the absence of an explanation.

For the second exception, the Kellogg farmers rely on *Williams v. Pennsylvania*, 579 U.S. 1 (2016). But there the Supreme Court didn't discuss the standard of review for the denial of a motion to recuse. In the cited discussion, the Court addressed only whether a refusal to recuse could prevent consideration of harmlessness. *Id.* at 14. Our issue involves the standard of review, not harmlessness in the event of an error.[4]

Because neither exception governs, we apply the abuse-of-discretion standard. *See* p. 10, above.

## 2. The district judge had discretion to deny the motion for recusal.

The Kellogg farmers challenge their automatic exclusion from the class actions, arguing that the district judge

- breached a fiduciary duty to them and

- needed to recuse as a result of that breach.

We reject this challenge.

---

[4] The former attorneys argue that a failure to recuse would have constituted harmless error. But we need not address this argument because the district court did not err. *See* pp. 12–16, below.

According to the Kellogg farmers, they lost the ability to participate in the class actions because the district judge breached a fiduciary duty to protect potential class members. It was the district judge, the Kellogg farmers say, who agreed to their automatic exclusion from the proposed classes.

Though the Kellogg farmers fault the district judge, he didn't breach a fiduciary duty; he simply allowed automatic exclusion based on the parties' agreement in the class action proceedings. In those proceedings, attorneys for some of the corn producers submitted a joint prosecution agreement. This agreement stated that the proposed class would exclude the Kellogg farmers and certain other corn producers. Am. and Restated Joint Prosecution Agreement at 16, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. July 26, 2016).

At a hearing, the district judge stated that he had reviewed the joint prosecution agreement but did not need to approve it:

It's a private agreement among private parties . . . .

But I'm not going to approve it and I'm not going to disclose it. I've read it. I'm not troubled by it, but I'm not approving it.

Tr. of Hr'g on Sealed Mot. by Pls. for Approval of Joint Prosecution Agreements at 30, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. Apr. 27, 2015).

12

Based on the joint prosecution agreement, attorneys for the corn producers sought certification of classes that excluded the Kellogg farmers and the other corn producers identified in the joint prosecution agreement. Sealed Mem. in Support of Producer Pls.' Mot. to Certify Class, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. June 17, 2016). After conducting a hearing and considering objections, the district judge found that the exclusions would not create a conflict of interest or deny due process. Mem. Op. & Order at 29–30, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. Sept. 26, 2016). Based on these findings, the judge certified classes that excluded the Kellogg farmers and the other corn producers specified in the joint prosecution agreement. *Id*. at 30.

The Kellogg farmers argue that the district judge should have recused because he had "played a critical role" in the decisions to "[allow] the automatic opt-outs of Farmers from the Syngenta MDL proceedings intended by [the Kellogg farmers' former attorneys] to exploit [the Kellogg farmers]." Appellants' Opening Br. at 47. This argument erroneously assumes that the district judge would need to recuse based on his earlier decision to allow automatic exclusion from the class action.

This assumption is wrong, for "judges need not ordinarily recuse after ruling on similar issues in other cases involving the same parties." *Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*, 968 F.3d 1156, 1168

(10th Cir. 2020). To the contrary, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute the basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Frey v. EPA*, 751 F.3d 461, 472 (7th Cir. 2014) ("[I]nformation a judge has gleaned from prior judicial proceedings is not considered extrajudicial and simply does not require recusal."). The Kellogg farmers haven't pointed to "deep-seated favoritism or antagonism" arising from the district judge's certification of classes excluding the corn producers identified in the joint prosecution agreement.

To show partiality, the Kellogg farmers point to a declaration by an expert witness, who urged recusal for three reasons:

1.  The district judge might have breached a fiduciary duty by allowing the automatic exclusion without considering the Kellogg farmers' best interests.

2.  The former attorneys might have lied to the district judge about the effect of the automatic exclusion.

3.  The district judge might have engaged in ex parte communications with class counsel or the Kellogg farmers' former attorneys.

In the expert witness's view, these possibilities required the district judge to testify why he had allowed the automatic exclusion. But the expert witness's speculation does not require the district judge to testify.

We can see for ourselves why the district judge allowed the automatic exclusion. The proceedings in the class actions included extensive discussion of the joint prosecution agreement, the scope of the classes to be certified, and the issues bearing on exclusion of the Kellogg farmers from these classes. *See* Tr. of Hr'g on Sealed Mot. by Pls. for Approval of Joint Prosecution Agreements at 28–30, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. Apr. 27, 2015) (the district judge's statements that he had reviewed the joint prosecution agreement containing provisions for exclusion from the classes); Sealed Phipps/Clark Pls.' Mem. in Opp'n to Producer Pls.' Mot. for Class Certification, at 18–21, 25–28, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. July 26, 2016) (attorneys for one group of corn producers arguing that the joint prosecution agreement had created conflicting interests among the corn producers). Because the record shows what the district judge considered and why he ruled as he did, there's no need for the judge to testify about his reasoning.[5] *See* Mem. Op. & Order at

---

[5]    The Kellogg farmers contend that opting out is an individual decision, which their attorneys weren't authorized to make. Some courts have held that class counsel can't decide whether to allow automatic opt-outs. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("The right to participate, or to opt-out, is an individual one and should not be made by the representative or the class counsel."), *overr'd on other grounds*, *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020); *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019) ("[A]llowing representatives to opt out a group of class members would deprive those members of their due-process right to make that choice for themselves

29–30, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL (D. Kan. Sept. 26, 2016) (the district judge's rejection of the challenge to the automatic exclusion of producers designated in the joint prosecution agreement).

Nor is testimony needed based on the expert witness's suspicion of ex parte communications. In considering the expert witness's suspicion, we apply "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). So "[m]ere speculation that an ex parte contact has occurred or that a judge was affected by it . . . does not warrant relief or further investigation." *Kaufman v. Am. Family Mut. Ins. Co.*, 601 F.3d 1088, 1095 (10th Cir. 2010).

The district judge says that he didn't engage in any ex parte conversations, and the Kellogg farmers present no reason to question the district judge's word. *See Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957 (10th Cir. 2001) (noting that we usually "[t]ak[e] the district court at its word"). The district judge thus did not abuse his discretion by declining to recuse.

---

. . . ."). Here class counsel didn't unilaterally decide on the exclusions; the Kellogg farmers' own attorneys consented. The Kellogg farmers present no reason for a judge to question the attorneys' authority to consent to their clients' exclusion from a proposed class.

16

**C.    The district court had jurisdiction to proceed while the interlocutory appeal was pending.**

Before filing this appeal, the Kellogg farmers had sought interlocutory review of the district judge's refusal to recuse. The Kellogg farmers contend that the district court lost jurisdiction during that appeal. This contention leads the Kellogg farmers to seek vacatur of thirteen orders:

1.    the district judge's acceleration of briefing deadlines for a request to schedule a planning conference, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Jan. 21, 2020)

2.    the magistrate judge's order for supplemental briefing on the district court's jurisdiction to proceed during the pendency of a petition for rehearing, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Jan. 30, 2020)

3.    the district judge's statement that he would later decide whether to suspend a briefing schedule, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Jan. 30, 2020)

4.    the magistrate judge's requirement for the Kellogg farmers to participate in a scheduling conference, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 4, 2020)

5.    the district judge's denial of a motion to suspend a briefing schedule, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 4, 2020)

6.    the magistrate judge's order to expedite briefing on a motion for sanctions, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 12, 2020)

7.    the magistrate judge's cancellation of a scheduling conference, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 18, 2020)

17

8.     the magistrate judge's grant of leave to answer the amended complaint out of time, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 19, 2020)

9.     the magistrate judge's denial of leave to file a surreply on a motion for sanctions, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Feb. 24, 2020)

10.    the magistrate judge's assessment of monetary sanctions and resetting of deadlines, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Mar. 3, 2020)

11.    the district judge's denial of the Kellogg farmers' motion to vacate orders, recuse, and stay the proceedings, Mem. & Order, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 15, 2020)

12.    the district judge's assessment of monetary sanctions for filing vexatious motions, Mem. Op. & Order, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 27, 2020)

13.    the district judge's assessment of monetary sanctions for failing to attend a planning conference, Order, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 28, 2020)

We decline to vacate these orders, concluding that the district court did not lose jurisdiction when the Kellogg farmers appealed the denial of their motion to recuse.

Some orders are appealable before the issuance of a final judgment. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (stating that denials of qualified immunity are immediately appealable). When a matter is appealable, the district court loses jurisdiction absent a certification of frivolousness. *Stewart v. Donges*, 915 F.2d 572, 577–78 (10th Cir. 1990). But a party can't strip the district court of jurisdiction by prematurely appealing. *See Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229

18

(10th Cir. 1998) ("[N]o transfer [of jurisdiction to the appellate court] occurs if the appeal is taken from a non-appealable order.").

We've disallowed immediate appeals from the denial of a motion to recuse or disqualify a judge. *Lopez v. Behles* (*In re Am. Ready Mix, Inc.*), 14 F.3d 1497, 1499 (10th Cir. 1994). Given the unavailability of an immediate appeal, we dismissed two of the Kellogg farmers' previous appeals. Order at 2, *In re Syngenta AG MIR 162 Corn Litig. (Kellogg Group)*, No. 19-3066 (10th Cir. Dec. 31, 2019) (dismissing the Kellogg farmers' appeal of the district court's denial of a recusal motion based on the failure to "establish[] that the district court's decisions [were] final or immediately appealable"); Order at 2, *In re Syngenta AG MIR 162 Corn Litig. (Kellogg Group II)*, No. 20-3006 (10th Cir. May 12, 2020) ("[T]his court's case law is clear that '[a]n order denying a motion to recuse or disqualify a judge is interlocutory, not final, and is not immediately appealable.'" (second alteration in original) (quoting *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1499 (10th Cir. 1994))).

Though disgruntled litigants can't appeal the denial of a motion for recusal, they can seek mandamus. *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995). And the Kellogg farmers did seek mandamus. *See* Order, *In re Kenneth P. Kellogg, et al.*, Nos. 20-3051, 20-3070 & 20-3084 (10th Cir. June 1, 2020) (denying the Kellogg farmers' petition for a writ of mandamus). But the filing of a mandamus petition didn't divest the district

19

court of jurisdiction. *See Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) ("[P]etitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case."); *Clark v. Taylor*, 627 F.2d 284, 288 (D.C. Cir. 1980) ("[T]he trial court had not lost its jurisdiction because the appellate court was entertaining an application for writ of mandamus.").

The Kellogg farmers cite *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338 (10th Cir. 1976), for the proposition that once the appeal was filed, the Tenth Circuit obtained jurisdiction. But in *Arthur Andersen*, we pointed out that a district court can proceed when the appeal involved a non-appealable order. *Id.* at 340–41. So under *Arthur Andersen*, the district court did not err by proceeding.

The Kellogg farmers also assert that by proceeding with the case, the district court committed a due process violation under *Stewart v. Donges*, 915 F.2d 572 (10th Cir. 1990). But *Stewart* addressed only the loss of jurisdiction when a party appeals an order deciding qualified immunity, which is immediately appealable, not when a party appeals a non-appealable order like the denial of a request for recusal. *See id.* at 573. So *Stewart* does not apply, and the district court did not violate due process by proceeding with the case.[6]

---

[6] In a letter submitted under Fed. R. App. P. 28(j), the Kellogg farmers state that the district court's order was immediately appealable as a denial

II.    **The Kellogg farmers' substantive challenges are either moot or invalid.**

The Kellogg farmers also challenge the rulings that the district court did make.

A.    **The RICO and common-law fraud claims are moot.**

The district court dismissed the claims under RICO and common-law fraud, reasoning that the Kellogg farmers had not suffered an injury-in-fact. The Kellogg farmers disagree with the dismissals, relying on their contingency-fee agreements and inability to participate in any of the class actions.

Under the mootness doctrine, an actual controversy must exist throughout the case. An actual controversy requires

- an injury-in-fact,

- "a sufficient causal connection between the injury and the conduct complained of," and

- a "likelihood that the injury will be redressed by a favorable decision."

*Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (internal quotation marks omitted). The kind of injury-in-fact required for an actual

---

of an injunction. But this was the first time that the Kellogg farmers suggested that the district court's refusal to recuse would have constituted a denial of an injunction, and we don't consider new arguments raised in a 28(j) letter. *See Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013). Even if we were to consider the new argument, the Kellogg farmers haven't explained or supported their characterization of the ruling as a denial of an injunction.

21

controversy depends on the elements of the claim. *See Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

"If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal quotation marks omitted). Intervening circumstances arose here, implicating the requirements of a claim involving RICO and common-law fraud.

These claims required the Kellogg farmers to prove an economic injury. *See Tal v Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006) (stating that a RICO action requires proof of an injury to business or property); *Hoyt Props. Inc., v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (stating that a common-law fraud claim requires proof of pecuniary damage). But the Kellogg farmers' alleged economic injury vanished when the district court

- prohibited the Kellogg farmers' former attorneys from enforcing the contingency-fee agreements and

- allowed the Kellogg farmers to participate in the class settlement on an equal basis with all other corn producers.

With the disappearance of an economic injury, the RICO and common-law fraud claims became moot.

Despite the disappearance of an economic injury, the Kellogg farmers contend that the district court

22

- considered the wrong time-period,

- disregarded the fees that their former attorneys had collected based on the contingency-fee agreements,

- failed to consider the case against their attorneys as a separate lawsuit, and

- ignored statutes that establish standing.

We conduct de novo review and reject these arguments. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014) (de novo review).

1. **The district court properly considered events after the suit had been filed.**

The Kellogg farmers view an injury-in-fact as something that we consider only when the suit begins. And when the Kellogg farmers sued, they allegedly had an economic injury from their obligations under the contingency-fee agreements. But a case or controversy must remain throughout the litigation. *See Phelps v. Hamilton*, 122 F.3d 1309, 1315 (10th Cir. 1997) ("[A] plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction." (quoting *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1485 (10th Cir. 1995))).

The case or controversy on the RICO and common-law fraud claims ended when the Kellogg farmers settled with Syngenta. So the district

court did not err by considering the settlement even though it took place after the Kellogg farmers had sued their former attorneys.

### 2. The attorney fees from the settlement do not constitute an injury-in-fact for the claims under RICO and for common-law fraud.

The Kellogg farmers urge an ongoing injury because their former attorneys ultimately profited from their contingency-fee agreements. But the former attorneys profited from the attorney-client relationships, not the contingency-fee agreements. Those relationships allowed the attorneys to recover settlement fees from Syngenta; but those fees came at the expense of Syngenta, not the Kellogg farmers, because the settlement had created two pools. In one pool, the district court had awarded roughly $1 billion to the Kellogg farmers and thousands of other corn producers. The court had also created a separate pool, containing roughly $500 million, to compensate the attorneys. *See* p. 5, above.

## Pool for Corn Producers



roughly $1 billion

## Pool for Attorneys



roughly $500 million

The tradeoff was that the attorneys couldn't collect anything outside their awards from the second pool. Mem. Op. & Order at 21–22, No. 14-MD-2591-JWL (D. Kan. Dec. 31, 2018) (MDL Dkt. No. 3882); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018).[7]

The attorneys could seek payment from the second pool based on the amount of their clients' losses. So the Kellogg farmers' former attorneys

---

[7]     In the amended complaint, the Kellogg farmers asked the court to cap their former attorneys' contingency fees "at zero" to equalize the assessment of attorney fees and expenses. Am. Class Action Compl. for Declaratory and Injunctive Relief and Damages at 10, ¶ 20, No. 18-cv-02408-JWL-JPO (D. Kan. Nov. 13, 2018). The district court effectively granted this cap by prohibiting attorneys from collecting anything under their contingency-fee agreements.

used those losses when calculating the payouts from the second pool. But that pool was divided only between attorneys; the attorneys' payouts from the second pool couldn't affect the amount paid to the Kellogg farmers or any other corn producers. So the payouts could not cause an economic injury to the Kellogg farmers on their claims involving common-law fraud or RICO.[8]

The Kellogg farmers argue that the entire settlement (including the pool of funds allotted to the attorneys) belonged to the class members. But the Kellogg farmers waived this argument by

- failing to sufficiently brief it and

- presenting it too late.

The Kellogg farmers waived this appellate argument by failing to develop a reason to disturb approval of the settlement, which had created the separate pools for corn producers and attorneys. The Kellogg farmers' opening brief states only that their "share of the Syngenta [multi-district litigation] common fund is [their] property." Appellants' Opening Br. at 38 (emphasis omitted). This one-sentence contention doesn't adequately present an argument that the $500 million attorney-fee pool belonged to the corn producers. *See Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P.*,

---

[8]    The Kellogg farmers appear to recognize that their common-law fraud and RICO claims wouldn't affect their own recovery under the settlement, as they argue that "[i]t is the process that matters, not the outcome." Appellants' Opening Br. at 44.

540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (stating that an argument is waived when it consists of a single sentence in an appeal brief).

Even if the Kellogg farmers had developed an argument to upend the settlement, this argument would have come too late. The Kellogg farmers didn't appeal the order approving the global settlement. *See Hawkins v. Evans*, 64 F.3d 543, 546 n.2 (10th Cir. 1995) (rejecting an attempt to collaterally attack an order in a previous case that had not been appealed). Nor did they raise the argument in district court when responding to their former attorneys' motion to dismiss.

The Kellogg farmers instead raised this argument for the first time when seeking vacatur of the district court's judgment. But a motion to vacate the judgment doesn't allow parties to present new arguments that could have been raised earlier. *See Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) ("[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument." (citing *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996))). The district court thus acted properly by declining to consider the Kellogg farmers' new argument involving the class members' ownership of the settlement funds.

### 3. The Kellogg farmers didn't show an injury-in-fact from the existence of a separate suit involving property interests.

The Kellogg farmers also point to the Multi-District Litigation Panel's distinction between the Kellogg farmers' suit against their former attorneys and the suits against Syngenta. According to the Kellogg farmers, the Panel's distinction served as recognition of an injury-in-fact.

We disagree. The Panel was just saying that the dispute between the Kellogg farmers and their former attorneys would need to be resolved through separate litigation rather than an objection to the global settlement. The Panel didn't comment on the existence of an injury-in-fact.

The Kellogg farmers also characterize their claims as "choses in action," triggering property interests under the Fifth Amendment. Regardless of this characterization, however, the Kellogg farmers lost a stake in the outcome when the district court nullified the contingency-fee agreements and allowed equal participation in the settlement.

### 4. Federal statutes did not create an injury-in-fact.

The Kellogg farmers also argue that RICO and the declaratory-judgment statute confer standing. It's true that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975). But Congress's authority to create an entitlement doesn't

28

scuttle the need for an injury-in-fact. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

The two federal statutes being invoked (RICO and the declaratory-judgment statute) don't automatically confer an injury-in-fact. RICO expressly requires an injury to "business or property." 18 U.S.C. § 1964(c); *see Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). And the declaratory-judgment statute requires the claimant to separately show an injury-in-fact. *See* 28 U.S.C. § 2201(a) (stating that a court can issue a declaratory judgment "[i]n a case of actual controversy"); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." (citation omitted)).

Despite the lack of statutory support for an ongoing case or controversy, the Kellogg farmers argue that the district court disregarded the separation of powers by dismissing the claims under RICO and the Declaratory Judgment Act. This argument is waived and invalid. It's waived because the Kellogg farmers didn't present this argument in district court or ask us to apply the plain-error standard. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). And the argument is invalid because statutory claims—like other claims—can become moot. *See, e.g., Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1480, 1484–85

29

(10th Cir. 1995) (concluding that claims brought under the Declaratory Judgment Act and another federal statute had become moot).

* * *

We thus conclude that the district court properly dismissed the claims involving common-law fraud and RICO. These claims became moot because the Kellogg farmers had no economic injury.

**B.      The district court acted within its discretion by sanctioning the Kellogg farmers through dismissal of their claim for breach of fiduciary duty.**

The district court also sanctioned the Kellogg farmers by dismissing their claim involving breach of fiduciary duty, and the Kellogg farmers challenge that dismissal. We conclude that jurisdiction existed and the district court did not abuse its discretion.

**1.      Jurisdiction existed in district court despite the absence of an economic injury.**

We again must address jurisdiction, considering whether the Kellogg farmers alleged an injury-in-fact. Though the Kellogg farmers suffered no economic injury, none was required for a claim involving breach of a fiduciary duty. *See Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984) ("[Minnesota] law treats a client's right to an attorney's loyalty as a kind of 'absolute' right in the sense that if the attorney breaches his or her fiduciary duty to the client, the client is deemed injured even if no actual loss results."); *see also Rice v. Perl*, 320

30

N.W.2d 407, 411 (Minn. 1982) (allowing a client to recover the compensation paid to an attorney who breached a duty of loyalty).

Because economic injury wasn't required, a legally protected interest existed based on Minnesota's recognition of a right to an attorney's loyalty. *See St. Paul Fire & Marine Ins. Co.*, 345 N.W. 2d at 212 (concluding that clients have a right to an attorney's loyalty under Minnesota law). The alleged invasion of that interest constituted an injury-in-fact. *See In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 599, 600–01 (9th Cir. 2020) (concluding that the availability of a disgorgement action under state law would establish a legally protected interest that suffices for Article III standing).

Given the allegation of an injury-in-fact, we consider the former attorneys' other jurisdictional challenges. The former attorneys argue that recovery couldn't benefit the Kellogg farmers because forfeiture of the attorney fees would result only in the distribution of additional fees to other attorneys rather than to other producers. We disagree. The district court explained that even though it "may have necessarily found that attorneys for farmers in the underlying litigation deserved fees (for work benefitting the settlement class)," "the [c]ourt did not find . . . that attorneys [had] never breached any duty of loyalty while representing farmers throughout the entire course of the underlying litigation." Mem. & Order at 14, No. 18-cv-2408-JWL-JPO D. Kan. Dec. 18, 2019). So breach

of a duty of loyalty could trigger an award to the Kellogg farmers. *See Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984).

> **2.    The district court didn't abuse its discretion in sanctioning the Kellogg farmers by dismissing the claim for breach of fiduciary duty.**

The court sanctioned the Kellogg farmers by dismissing their claim for breach of fiduciary duty, reasoning that the Kellogg farmers and their new counsel had "repeatedly, obstinately refused to accept the Court's rulings or to comply with its orders, even after warnings that continued noncompliance could result in dismissal." Mem. Op. & Order at 1, No. 18-cv-02408-JWL-JPO (D. Kan. July 28, 2020).

The Kellogg farmers challenge the dismissal, and we review

- the dismissal for an abuse of discretion and

- the underlying factual findings for clear error.

*See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (abuse-of-discretion standard); *Olcott v. Dela. Flood Co.*, 76 F.3d 1538, 1551 (10th Cir. 1996) (clear-error standard).

The Kellogg farmers previously filed two premature appeals. After we dismissed the first one, the district court tried to move the case along. The court started by ordering a discovery planning conference.

The Kellogg farmers' new attorney refused to participate, stating that the district court lacked jurisdiction. The Kellogg farmers then filed a

32

second notice of appeal and applied for a writ of mandamus, again challenging the district court's refusal to recuse.

The magistrate judge set a date for the planning conference, but the Kellogg farmers' new attorney failed to attend and again moved for recusal and vacatur of every ruling made during the pendency of the prior appeal. When the new attorney failed to appear at the discovery planning conference, the former attorneys moved for sanctions, including dismissal. The magistrate judge declined to recommend dismissal, but ordered the Kellogg farmers to pay the fees and expenses incurred by the former attorneys to attend the earlier discovery planning conference.

The magistrate judge scheduled a second discovery planning conference, warning the Kellogg farmers' new attorney that failure to attend or participate would result in a recommendation of dismissal. The new attorney attended the second conference by telephone. But he refused to budge, announcing that he would not participate in discovery or pretrial preparation until our court decided the new appeal and request for mandamus.

The Kellogg farmers also filed a second motion for recusal without addressing the district court's reasons for denying the first motion. The district court required the Kellogg farmers to pay the attorney fees and expenses that the former attorneys had spent to respond to the second recusal motion. The Kellogg farmers failed to pay these sanctions.

33

Given the Kellogg farmers' disregard of these orders, the former attorneys obtained sanctions consisting of dismissal with prejudice on the sole remaining claim (breach of fiduciary duty). In imposing this sanction, the court considered five pertinent factors: "(1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the [offending] party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." Mem. Op. & Order at 8, No. 18-cv-02408-JWL-JPO (D. Kan. July 28, 2020) (quoting *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1140–41 (10th Cir. 2007)). In the district court's view, each factor supported dismissal.

In responding to the district court's assessment, the Kellogg farmers contend that the district judge had a conflict of interest and lacked jurisdiction to proceed during the pendency of the appeal. We've elsewhere rejected these contentions. *See* pp. 10–20, above.

The Kellogg farmers also argue that

- the failure to pay the monetary sanctions could have been addressed by other means, like the posting of a bond or execution of the judgment, and

- bad faith is necessary for a dismissal with prejudice.

We reject both arguments.

34

The district court could have enforced the monetary sanctions through a bond or execution of a judgment. But the court reasonably viewed lesser sanctions as futile given the Kellogg farmers' refusal to pay the monetary sanctions. So the court did not abuse its discretion in dismissing the claim with prejudice.

The Kellogg farmers also argue that dismissal is appropriate only when a party acts in bad faith. We disagree.

Although dismissal is a harsh sanction, it may be appropriate in cases of "willfulness, bad faith, *or* some fault." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (emphasis added) (cleaned up); *see also Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) ("[D]ue process requires that the discovery violation be predicated upon willfulness, bad faith, or some fault of [the] petitioner rather than inability to comply." (cleaned up)). So the district court can impose dismissal when a defendant willfully disobeys orders. *See Willner v. Univ. of Kan.*, 848 F.2d 1023, 1030 (10th Cir. 1988).

The magistrate judge found that the Kellogg farmers had "willfully refus[ed] to participate in the litigation before th[e] court." Order at 8, No. 18-cv-02408-JWL-JPO (D. Kan. Mar. 3, 2020). The district judge upheld this ruling. Mem. & Order at 2–3, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 15, 2020). The magistrate judge and the district judge had discretion to find willful disregard of their orders. *See Ehrenhaus v. Reynolds*, 965

35

F.2d 916, 921 (10th Cir. 1992). We review their factual findings for clear error, *see id.*, and see none here.

The Kellogg farmers insist that bad faith is required for dismissal, relying on *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958). We disagree. In *Societe Internationale*, the Supreme Court invalidated a dismissal because compliance with the underlying order might have violated Swiss law. *Id.* at 204, 208–12.

No similar impediment prevented the Kellogg farmers from complying with the district court's order. And in *Societe Internationale*, the Supreme Court reiterated that noncompliance with a court order could justify dismissal when there is "willfulness, bad faith, *or* . . . fault" on the petitioner's part. *Id.* at 212 (emphasis added).

The district court reasonably based the sanction of dismissal on prejudice to the former attorneys, interference with the judicial process, culpability, warnings to the Kellogg farmers, and ineffectiveness of lesser sanctions. In applying these considerations, the court acted within its discretion.

**C.**     **The district court did not err in dismissing the Minnesota statutory claims based on the failure to allege a public benefit.**

The district court also dismissed claims under three Minnesota statutes:

1.    Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1

2.    Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67

3.    Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–48

The Kellogg farmers challenge these dismissals, and we reject the challenges.

**1.    The district court had jurisdiction over these claims.**

The threshold issue involves jurisdiction, which requires an injury-in-fact. *See* Part II(B)(1), above.

An injury-in-fact requires

- "an invasion of a legally protected interest" and

- a harm that is "concrete and particularized" and "actual or imminent . . . ."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The Kellogg farmers adequately alleged an injury-in-fact. The attorneys' alleged conduct included deceptive statements that deprived the Kellogg farmers of an opportunity to make informed decisions about the Syngenta litigation. *See* Appellants' App'x vol. II, at 153–59. Based on these allegations, the Kellogg farmers have adequately alleged the invasion of a legally protected interest because Minnesota law recognizes a protected interest in the loyalty of one's attorneys.  *See Perl v. St. Paul*

37

*Fire & Marine Ins. Co.*, 345 N.W.2d 209, 212 (Minn. 1984) (allowing a client to recover the compensation paid to an attorney who breached a duty of loyalty); *see also State v. Minn. v. Sch. of Bus., Inc.*, 935 N.W. 2d 124, 138–39 (Minn. 2019) (allowing recovery for equitable restitution to divest a wrongdoer of improper profits). The Kellogg farmers' interest is legally protected even if they can't recover under the Minnesota statutes. *See Duke Power v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 78–79 (1978); *see also WildEarth Guardians v. United States Bureau of Land Management*, 870 F.3d 1222, 1232 (10th Cir. 2017) ("Our own precedents indicate that the legal theory and the standing injury need not be linked as long as [the injury-in-fact is likely to be redressed by a favorable decision].").

Given the allegations of statutory violations involving disloyalty, the Kellogg farmers have adequately alleged a legally protected interest and a harm that is "concrete and particularized" and "actual and imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). So we have jurisdiction over the statutory claims.

## 2. The Kellogg farmers fail to adequately develop an appellate argument on public benefit.

Given jurisdiction, we consider the Kellogg farmers' challenge to the dismissals. The Kellogg farmers had brought these claims under Minnesota's private-attorney-general statute, Minn. Stat. § 8.31 subd. 3a.

38

Under this statute, a private right-of-action exists only if successful prosecution of the claim would benefit the public. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

Recovery might benefit the public when a merchant broadcasts a fraudulent advertisement and makes "numerous sales and information presentations" to the public. *Collins v. Minn. Sch. of Bus.*, 655 N.W.2d 320, 330 (Minn. 2003). In contrast, recovery doesn't benefit the public when the claimant is defrauded in a "single one-on-one transaction." *Nystrom*, 615 N.W.2d at 314.

In the amended complaint, the Kellogg farmers allege that

- their former attorneys chose a harmful litigation strategy in order to maximize their own attorney fees and

- recovery from the former attorneys would benefit the 60,000 farmers and consumers in Minnesota who rely on an honest, ethical market for legal services.

The district court considered these allegations and concluded that they hadn't created a public benefit. Mem. & Order at 6–9, No. 18-cv-2408-JWL-JPO (D. Kan. Aug. 13, 2019), *adhered to in part on reconsideration*, Mem. & Order at 9–11, No. 18-cv-2408-JWL-JPO (D. Kan. Dec. 18, 2019). For this conclusion, the court reasoned that

- the Kellogg farmers had mainly sought forfeiture of attorney fees to compensate for past wrongs rather than to stop ongoing misconduct,

- the pursuit of class-wide claims hadn't necessarily provided a public benefit, and

39

- the alleged misrepresentations had targeted a specific group within a specific industry.

*Id.*

The Kellogg farmers sought reconsideration, arguing that for a public benefit, "the Minnesota Supreme Court only requires a determination of whether Defendants are engaged in misrepresentations to the public through advertisement." Class Pls.' Mem. in Support of Mots. to (1) Correct a Clerical Error in the August 13, 2019 Mem. and Order, (2) Vacate the Substantive Rulings, (3) Certify a Question to the Minnesota Supreme Court, and (4) Vacate All Orders at 14–15, No. 18-cv-02408-JWL-JPO (D. Kan. Sept. 10, 2019). The district court rejected this argument, reasoning that the Kellogg farmers hadn't alleged a misrepresentation to the public at large. Mem. & Order at 10–11, No. 18-cv-2408-JWL-JPO (D. Kan. Dec. 18, 2019).

In their opening appeal brief, the Kellogg farmers present an argument consisting of only a single sentence, asserting that the district court "disregard[ed] binding Minnesota Supreme Court precedent that the *only* requirement for application of the Minnesota business and consumer protection claims is a determination of whether the [attorneys] engaged in misrepresentations to the 'public at large' through advertisements, etc." Appellants' Opening Br. at 41 (emphasis in original) (quoting *Collins*, 655 N.W.2d 320). Nowhere do the Kellogg farmers address the district court's

40

reasoning, which treated the alleged misrepresentations as made to a specific group rather than the public at large. By failing to develop an argument that the district court erred, the Kellogg farmers waived a challenge to dismissal of the statutory claims. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ("[P]erfunctory [allegations of error] fail to frame and develop an issue sufficient to invoke appellate review."). Given this waiver, we affirm the dismissal of the three statutory claims.[9]

---

[9]    The district court noted that one of the statutes (the Minnesota Uniform Deceptive Trade Practices Act) contains its own provision for a private right-of-action. So the requirement of a public benefit might not apply to that claim. Nevertheless, the Kellogg farmers relied only on the private-attorney-general statute to bring their claims under the Minnesota Uniform Deceptive Trade Practices Act. So the district court concluded that

- "the claim as pleaded [wa]s subject to dismissal,"

- even if the Kellogg farmers had asserted a claim through the Minnesota Uniform Deceptive Trade Practices Act rather than the private-attorney-general statute, the claim would have been futile because the Act provides only injunctive relief, and

- the Kellogg farmers had not alleged ongoing deception of other consumers.

Mem. & Order at 6–10, No. 18-cv-2408-JWL-JPO (D. Kan. Aug. 13, 2019), *adhered to in part on recons.*, Mem. & Order at 9–11, No. 18-cv-2408-JWL-JPO (D. Kan. Dec. 18, 2019). The Kellogg farmers have not challenged the district court's reasoning on the alleged violation of the Minnesota Uniform Deceptive Trade Practices Act. The failure to present a separate challenge constitutes a waiver. *See Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270, 1281 (10th Cir. 2019) (finding a waiver when an appellant failed to explain how the district court's reasoning was wrong).

41

**D.    The district court did not abuse its discretion in assessing monetary sanctions against the Kellogg farmers.**

The Kellogg farmers also challenge monetary sanctions imposed by the magistrate judge and the district judge.

The magistrate judge assessed sanctions against the Kellogg farmers for failing to obey a scheduling order and permit discovery.[10] The district judge assessed sanctions under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings. Mem. & Order at 5–6, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 15, 2020). The § 1927 sanctions were based on costs that the former attorneys had incurred in responding to the Kellogg farmers' motion to vacate and recuse. We review these sanctions for an abuse of discretion. *See Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015).

In challenging the monetary sanctions, the Kellogg farmers argue that they had legitimate grounds to object to the district court proceedings and to refuse to participate until we decided their interlocutory appeal. The district court had the discretion to regard these objections as illegitimate.

If the Kellogg farmers had questioned the validity of the district court's order for a discovery conference, "they could have sought reconsideration or a writ; but they could not violate the order." *Auto-*

---

[10]    The Kellogg farmers objected to the magistrate judge's monetary sanctions, but the district judge overruled the objections. Mem. Op. & Order, No. 18-cv-02408-JWL-JPO (D. Kan. Apr. 3, 2020).

42

*Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 867 (10th Cir. 2018); *see also Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) (stating that a party must comply with an order (in the absence of a stay) even when the party questions the validity of an order). And the Kellogg farmers lacked a reasonable basis to question the validity of the district court's initiation of discovery because we'd already dismissed a virtually identical appeal as premature. Order at 2, *In re Syngenta AG MIR 162 Corn Litigation (Kellogg Group)*, No. 19-3066 (10th Cir. Dec. 31, 2019); *see also Lopez v. Behles* (*In re Am. Ready Mix, Inc.*), 14 F.3d 1497, 1499 (10th Cir. 1994) (stating that orders denying recusal are not immediately appealable).[11]

We've held that jurisdiction continues in district court when a party prematurely appeals. *See Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998) (stating that a non-appealable order does not transfer jurisdiction from the district court to the appellate court). The Kellogg farmers' new attorney flouted these holdings and obstructed the proceedings by refusing to comply with the district court's orders.

---

[11] The Kellogg farmers assert that the district court imposed the sanctions as "an adversarial response . . . to [their] efforts to disqualify the district court through the interlocutory appeal and mandamus petition[]." Appellants' Opening Br. at 55. For this assertion, the Kellogg farmers provide no support.

43

That attorney did attend the second planning conference and announce his position. But he still refused to proceed with a discovery plan, which stymied the district court's ability to advance the case. *See Dietz v. Bouldin*, 579 U.S. 40, 41 (2016) (noting a district court's "inherent power to . . . manage its docket and courtroom with a view toward the efficient and expedient resolution of cases"). The magistrate judge and the district judge thus had a reasonable basis to find obstructive conduct.[12]

The Kellogg farmers also argue that sanctions may be imposed only after the case had ended. For this argument, the Kellogg farmers rely on *Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006). But *Steinert* holds only that § 1927 sanctions *may* be imposed after final judgment. *Id.* at 1223. The case does not prevent sanctions while the case is proceeding, and the district court acted properly in imposing sanctions before entering the final judgment.

We thus conclude that the district court did not abuse its discretion in imposing monetary sanctions.

---

[12]    The Kellogg farmers say that they couldn't "be charged with a failure to prosecute" during their interlocutory appeal and application for mandamus relief. Appellants' Reply Br. at 5. But the district court didn't suggest a failure to prosecute the action; the court instead imposed sanctions based on a failure to comply with orders.

**Analysis of the Claims Against the Seven Other Law Firms**

The Kellogg farmers sued not only their own former attorneys but also seven law firms that had assisted.[13] For the dismissal of these claims, we engage in de novo review, using the standard that applied in district court. *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1200 (10th Cir. 2016). In district court, the applicable standard was the one governing motions to dismiss under Fed. R. Civ. P. 12(b)(6): whether the amended complaint contained factual allegations creating a reasonable inference of liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *BV Jordanelle*, 830 F.3d at 1200–01.

The Kellogg farmers argue that they could bring claims against the seven law firms because they had been listed in the contingency-fee agreements.[14] For this argument, the Kellogg farmers invoke

- Minnesota Rule of Professional Conduct 1.5(e), which requires attorneys to accept joint responsibility under fee-sharing agreements, and

- the opinion of an expert witness, who concluded that all of the attorneys listed on the contingency-fee contracts had violated their fiduciary obligations to the Kellogg farmers.

---

[13] The seven other law firms are Hovland and Rasmus, PLLC; Dewald Deaver, P.C., LLO; Patton Hoverson & Berg, P.A.; Wojtalewisz Law Firm, Ltd.; Johnson Law Group; VanDerGinst Law, P.C.; and Wagner Reese, LLP.

[14] The Kellogg farmers also argue that they could bring these claims in a representative capacity. But the district court did not dismiss these claims based on an inability to sue in a representative capacity.

We reject this argument. The district court granted judgment on the pleadings to the seven law firms after terminating all but the Minnesota claim for breach of fiduciary duty. Under Minnesota law, however, an attorney bears no fiduciary duty to a non-client. *See McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008). And the Kellogg farmers were not clients of these seven law firms. So these law firms had owed no fiduciary duty to the Kellogg farmers, and the district court properly granted judgment on the pleadings to the seven law firms.

### The Kellogg Farmers' Additional Motions

The Kellogg farmers have filed a motion entitled "Motion for Judicial Notice or, in the Alternative to Supplement the Record on Appeal." They have also filed a second motion for judicial notice of other documents.

These motions concern the fee awards received by the former attorneys as part of the global settlement in the suits against Syngenta. The Kellogg farmers ask us to (1) take judicial notice of demands that the former attorneys deposit the attorney fees into an escrow account until this case is resolved or (2) supplement the record with these demands. The Kellogg farmers also seek vacatur of the district court's rulings and return of the case to the District of Minnesota. These motions lack merit.

Even though the Kellogg farmers demand an escrow account for the collection of forfeited attorney fees, this demand does not affect our

46

analysis of mootness, recusal, public benefit, or sanctions. So our analysis moots the demand for an escrow account.

Our analysis also moots the Kellogg farmers' repetition of their arguments for vacatur and transfer of the case to the District of Minnesota. We've elsewhere rejected these arguments. *See* pp. 6–9, 17–20, above.

We thus deny the Kellogg farmers' motions.

## Conclusion

We lack appellate jurisdiction to review the Multi-District Litigation Panel's transfer of the case to the District of Kansas and reject the Kellogg farmers' procedural challenges involving recusal and jurisdiction in district court. And we affirm

- the dismissal of the claims involving common-law fraud and RICO based on mootness,

- the sanctions requiring monetary payment and dismissing the claim for breach of fiduciary duty,

- the dismissal of the claims under Minnesota's private-attorney general statute, and

- the award of judgment on the pleadings to the seven law firms lacking contractual ties to the Kellogg farmers.

Finally, we deny the Kellogg farmers' motion for judicial notice or supplementation of the record.